KEVIN CLAY FINLEY,

    Appellant,

  v.

DAWN MARIE CHESSER,

    Respondent.

No. 38723-2-III

UNPUBLISHED OPINION

FEARING, J. — Father Kevin Finley challenges a parenting plan entered for the placement and care of his two children begat with mother Dawn Chesser. He primarily challenges the family court's imposition of RCW 26.09.191 limitations on his time with the children and the court's refusal to order similar .191 restrictions on Chesser. Because Finley fails to thoroughly review the critical facts, because Finley takes the evidence in a light favorable to him, and because the evidence supported the family court's findings of fact and conclusions of law, we affirm.

## FACTS

Both parties' briefs cite to and quote the family court's findings of fact, but the briefs lack citation to the underlying facts and testimony supporting or contradicting the court's findings. In addition, respondent Dawn Chesser, in her brief, emphasizes recommendations of the children's guardian ad litem without any citation to the report of proceedings that justify the recommendations. This paucity of citation to trial testimony impedes our resolution of this appeal.

Kevin Finley and Dawn Chesser began a committed relationship in 2004, when Finley was 38 years old and Chesser was 22 years old. The two never married. The relationship ended in either the fall of 2012 or July 5, 2013, depending on the testimony of the parties. The couple bore two children: female K.F. born in August 2006 and male L.F. born in January 2008. In the early years, Finley cared for the two children while Chesser maintained employment outside the home.

On May 18, 2006, Dawn Chesser filed a petition for a family violence protection order against Kevin Finley. The superior court denied the petition. In June 2007, Chesser filed another petition for a family violence protection order against Finley. The superior court granted this petition.

On October 25, 2011, law enforcement arrested Dawn Chesser for an assault against Kevin Finley. The State later dismissed the charge. Chesser concedes breaking a window, but we do not know if this incident led to the criminal charges.

We surmise that, even after the couple's separation in 2012 or 2013 and until 2019, Kevin Finley principally cared for the two children while Dawn Chesser worked. During this time, the children's home experienced "constant turmoil." 1 Report of Proceedings (RP) at 458. Finley demeaned and embarrassed the children in public. He berated the children for failing to adequately perform chores. The father grew meaner when drinking alcohol.

While living with Kevin Finley, the two children slept in the same room as Finley. L.F. and Finley slept in the same bed, while K.F. slept in a separate bed. The children heard Finley masturbate at night. Finley insisted that each child sleep eleven hours a night. He awoke both in the middle of the night to urinate.

In later years when Kevin Finley hugged K.F. before bed, he ran his hand across K.F.'s back to discern if she wore a bra. Finley also occasionally entered the bathroom while K.F. showered.

Since 2019, Dawn Chesser has provided most of the care for the children. Kevin Finley has not had any unsupervised time with the children since July 2019. The children now enjoy a stronger and more stable relationship with Chesser than they do with Finley. K.F. and L.F. maintain closer ties with Chesser's family than with Finley's family.

After separating from Kevin Finley but at some unidentified date, Dawn Chesser cohabitated with Phillip Ragland. Ragland assaulted Chesser probably at a time that the two children were absent. Chesser thereafter took measures to prevent contact between Ragland and her two children. She sought a domestic violence protection order against Ragland.

## PROCEDURE

On August 19, 2019, Kevin Finley filed a petition to establish a parenting plan for K.F. and L.F. Finley requested the trial court, in addition to adopting his proposed

parenting plan, grant him a restraining order against Dawn Chesser. Finley's proposed

parenting plan requested RCW 26.09.191 findings against Chesser, primary placement of

the children with him, and sole decision-making authority by him.

On September 12, 2019, Dawn Chesser filed a counter proposed plan seeking

RCW 26.09.191 findings against Kevin Finley. Chesser also requested primary custody

of the children and sole decision-making authority. The parties could not reach an agreed

parenting plan. On September 26, 2019, the family court entered a temporary parenting

plan that adopted Chesser's proposed plan.

The family court appointed Priscilla Vaagen as guardian ad litem for the children.

The court tasked Vaagen with reviewing each parent's past care for the children and with

projecting each parent's ability to care for the children in the future. In an interim and

final report, Vaagen chronicled the parties' domestic violence record, substance abuse

history, and intervention by Child Protection Services. Vaagen wrote that the children

did not feel safe with their father and that they both wanted to live with their mother.

According to Vaagen, the children thrived while living with their mother.

The trial on Kevin Finley's petition began on November 8, 2021. The two

children were then ages 15 and 13. During trial, the court heard testimony from Priscilla

Vaagen, Finley, and Dawn Chesser. During the course of the trial, Finley argued that

Chesser suffers from mental health illnesses, engages in acts of family violence,

4

withholds the children from him, neglects the children, abuses substances that interferes

in her ability to parent, and engages in abusive behavior that endangers the children's

psychological development. Chesser contended that Finley regularly willfully abandons

the children, engages in acts of family violence, physically assaults the children, sexually

assaults the children, and engages in abusive behavior that damages the children's

psychological development.

The family court delivered an oral ruling on December 3, 2019. Portions of the

ruling addressed the parties' requests that RCW 26.09.191 limitations be placed on each

other. Because of the paucity of facts outlined in the parties' brief, we quote extensively

from the court's ruling.

> The Court does not find Mr. Finley has engaged in acts of domestic violence against Ms. Chesser under RCW 26.09.191.
> The record supports a finding that Ms. Chesser has engaged in acts of domestic violence against Mr. Finley. She was arrested for second-degree assault, family violence, on October 25, 2011, with Mr. Finley as the listed victim. The charge was dismissed, as the prosecutor was unable to locate Mr. Finley.
> Even though a finding of domestic violence may be warranted, under RCW 26.09.191(2)(n) the court may decide not to impose mandatory limitations provided the Court expressly finds that the probability of Ms. Chesser's harmful or abusive conduct reoccurring is so remote that it would not be in the children's best interest to apply the limitation.
> Ms. Chesser is 40 years old. She's been arrested one time, in ten years, for assault, domestic violence, with Mr. Finley being the only alleged victim. Since minimizing their time together Ms. Chesser has had no further allegations made against her by Mr. Finley or anybody else.

If the Court were to make a finding of domestic violence against Ms. Chesser, the Court would also make the finding under RCW 26.09.191(2)(n).

Mr. Finley further alleges Ms. Chesser allowed acts of domestic violence to occur in her home while residing with Phillip Ragland. Ms. Chesser was the victim and Mr. Ragland the defendant. . ..

Since that event, Ms. Chesser has taken the necessary steps to protect herself and the children from Mr. Ragland. Further, there is no evidence before the Court that the children were present when Mr. Ragland assaulted Ms. Chesser.

. . . .

Ms. Chesser admits to using marijuana but not around the children. [K.F.] contradicted this statement in telling the guardian ad litem that Ms. Chesser uses marijuana but does it in another room or outside.

Given Ms. Chesser's recent chemical dependancy [sic] assessment, another evaluation would not be productive. Instead, Ms. Chesser will be prohibited from using alcohol or marijuana while the children are in her care.

Whether he recognizes it or not, Mr. Finley has a history of substance abuse. Many years ago, in his custody matter with [G's] mother, Mr. Finley underwent a substance abuse treatment. More recently, the children claim Mr. Finley drinks beer all day and vodka at night. [K.F.] stated to the guardian ad litem Mr. Finley is meanest when he is drinking.

Mr. Finley claims he hasn't drank since early 2019. On February 18, 2019, a social worker went to his home and noticed signs of alcohol impairment. A few months prior, a school official reported that every time she—he or she interacts with Mr. Finley, he smells of alcohol.

The Court is satisfied that Mr. Finley suffers from a substance abuse problem that negatively impacts his ability to parent. . ..

Mr. Finley alleges Ms. Chesser has neglected the children and has withheld the children from him without good cause. The Court is not making these findings. Prior to July 2019, Ms. Chesser consistently neglected her parental responsibilities. The extent of her neglecting her parental responsibilities is outlined in the guardian ad litem report.

Since 2019, the circumstances have dramatically changed, and Ms. Chesser now appropriately cares for the children. The allegations of neglect is [sic] dated and is [sic] currently unfounded.

Likewise, Ms. Chesser has not recently withheld the children. Rather, the children are being withheld due to a court order entered on September 26, 2019. Years ago, Ms. Chesser fled to a shelter for 30 days, but leaving Mr. Finley at that time was justified and would constitute good cause.

. . . There was uncontested testimony at trial corroborated by Ms. Chesser in her interview with the guardian ad litem that she has been physically, sexually, and emotionally abused throughout her life without any adult stepping in to protect her. Not to place the blame on Ms. Chesser being victimized, but it does not seem Ms. Chesser has fully addressed the long-term impact of the abuse she suffered. The consequences of not fully addressing these experiences may be seen in her being abused by Mr. Ragland and not comprehending the inappropriateness of showing a coworker a video of another coworker engaged in sex acts.

Ms. Chesser has a long-term emotional problem that has substantially interfered with her ability to parent. To resolve this deficiency, Ms. Chesser has sought counseling with Ms. Zorrozua and is currently making progress.

Mr. Finley also has a long-term emotional problem that substantially interferes with his ability to parent. The guardian ad litem reported Mr. Finley's therapist, Mr. Frost, found he has a distorted thought process manifesting itself in blaming others for how he feels, expecting the worst, and focusing on the negative. These observations of his therapist mirror Mr. Finley's behavior towards the children and Ms. Chesser.

The Court does not find Mr. Finley has engaged in acts of child abuse or has threatened to abuse the children. . ..

[K.F.] reported Mr. Finley slapped her in the face. The line is too fine for the Court to make a finding of abuse rather than parental discipline, assuming these acts occurred.

Both parties also have engaged in the abusive use of conflict that causes serious damage to the psychological development of the children. The abusive use of conflict dates back to the time of [K.F.]'s birth and appears primarily in the form of consistently attempting to report one another to the police and CPS. Ms. Chesser has made public statements about Mr. Finley in the children's school and to the community of Fairfield that are unfounded and are damaging to the children. Neither party seems to be capable of maturely and rationally resolving their issues.

To summarize the parties' requests for restrictions under RCW 26.09.191, the Court finds Mr. Finley has a long-term physical problem or emotional problem that interferes with his ability to parent, has engaged in the abusive use of conflict in a way that endangers or damages the psychological development of the children, and has a substance abuse problem that substantially interferes with his ability to parent.

The Court does not find Mr. Finley has engaged in acts of family violence, has abused or threatened to abuse the children, or has assaulted or sexually assaulted someone causing grievous bodily harm or fear of such harm.

The court finds Ms. Chesser has engaged in the abusive use of conflict in a way that endangers or damages the psychological development of the children and has a long-term emotional problem that interferes with her ability to parent. The Court does not find Ms. Chesser neglected her parental duties towards the children, has a substance abuse problem that interferes with her ability to parent, has withheld the children from Mr. Finley without good cause, has engaged in acts of family violence, and has allowed someone to engage in acts of assault while residing in her home.

In making the findings under RCW 26.09.191, Ms. Chesser will be granted sole decision-making authority.

Earlier I commented on how the .191 decision would control the parenting plan. RCW 26.09.187(3)(b) provides that a substantially equal parenting plan not be imposed when the limitations of RCW 26.09.191 are dispositive. That seems to be the case here.

1 RP at 445-51 (emphasis added) (alterations added).

After concluding that the limitations of RCW 26.09.191 governed the children's

residential schedule, the court addressed the factors outlined in RCW 26.09.187(3):

The first factor is the relative strength, nature, and stability of the children's relationship with each parent. From their birth until 2019, the children had a stronger relationship with Mr. Finley due to Ms. Chesser being absent most of the time. The Court does not define it as a stable relationship, but Mr. Finley did have the stronger relationship.

8

Ms. Chesser only saw the children every other weekend or every weekend with attempts at midweek visits. Her limited time with the children was insufficient to create a strong and stable bond.

Since July 2019, Ms. Chesser has developed a strong and stable relationship with the children. She's maintained the same residence, has met their educational needs, and has worked to remove negative influences from their lives, such as the men Ms. Chester was dating and her use of marijuana. By all accounts, the children are happy and well cared for while in Ms. Chesser's care.

. . . .

In the past, the children experienced a greater bond with Mr. Finley than with Ms. Chesser. Currently, the children have a stronger and more stable relationship with Ms. Chesser.

. . . .

The second factor asks the Court to consider any agreements reached by the parties. The parties have not reached any agreements on a parenting plan.

The third factor is each parent's past and potential for future performance of parenting functions, including whether a parent has taken greater responsibility for performing parenting functions relating to the children's daily needs. . ..

It is undisputed that Mr. Finley provided nearly all of the parenting functions from the time of the children's birth until approximately July 2019. After [K.F.] was born, Mr. Finley quit working to be a stay-at-home parent. He was responsible for meeting the children's daily needs, although it sounds as if Ms. Chesser was the parent primarily responsible for their medical care.

. . . .

Since July 2019, Mr. Finley has not engaged in any parenting functions, as he has not had any unsupervised time with the children. During his time with the children, Mr. Finley had his challenges. His structure and expectations of the children seemed excessive.

Until the children quit residing with him at ages 11 and 13, he slept in the same bed as [L.F.] with [K.F.] in a different bed in the same room. The children claim they would hear Mr. Finley masturbating. Whether he was or not, by sleeping in the same bed as [L.F.] and next to [K.F.], he sets himself up for these types of allegations.

9

When hugging [K.F.] before bed, Mr. Finley would rub his hand across her back to see if she was wearing a bra. If she was, he'd have her remove it before going to bed.

Mr. Finley, by his own admission, would also enter the bathroom while [K.F.] was showering. It bothered [K.F.], but Mr. Finley minimized it by stating there was a privacy curtain.

It seems Mr. Finley lacks insight into the developmental needs of a young teen girl. At 13 years old, [K.F.] should not be sleeping in her father's room, claiming to hearing him masturbating with her lotion, should have her privacy while showering, and should not have him checking to see if she's wearing a bra.

Given the allegations Mr. Finley was sexually inappropriate with his now-29-year-old son, [G], when [G] was a minor, one would think Mr. Finley would be hypersensitive about his conduct around his children, especially when a second parent is not present in the home.

. . . In more than two years, Mr. Finley has not provided hardly any financial support for the children.

. . . .

The best way to predict a parent's future ability to provide parenting functions is to look at their history. Ms. Chesser's history of performing parenting functions is far from perfect, but much of it may be attributed to the environment she was residing in with Mr. Finley.

While the two were together, law enforcement presence was a constant in their lives. Since they've completely separated, there's been little, if any, law enforcement contacts.

Given Ms. Chesser's history of parenting over the past couple of years, the Court does not have any concerns about her ability to provide parental functions in the future.

Mr. Finley's history of providing parenting functions was prior to July 2019. During that time, he provided for the children but not always in the most appropriate manner. Given [K.F.]'s age, the Court has concerns about Mr. Finley providing parenting functions in the future. This may also hold true for [L.F.] and his weight issues.

. . . Given their ages, the children's developmental level does not seem to be as pressing as their emotional needs. By all account, their childhood has been an emotional roller coaster. . ..

10

According to the children, they could never live up to Mr. Finley's expectations, Mr. Finley was demeaning, would embarrass them in public, and would get meaner with the more he drank. During their time residing with Mr. Finley, the police responded to their home over a dozen times, mainly at Mr. Finley's request. During those years, Ms. Chesser was in and out of their lives.

. . . .

. . . Little evidence was admitted about the children's relationship with others. They have a relationship with Ms. Chesser's mother and stepfather, both of whom seem to have their own issues. They also have a relationship with Ms. Chesser's aunt and uncle. By all accounts, Mr. Finley has little, if any significant relationships. According to the guardian ad litem, [K.F.] was scolded by Mr. Finley for attempting to contact his family over Facebook. The one constant relationship the children have is each other. They've been through this together.

. . . .

Both children, ages 15 and 13, are sufficiently mature enough to express an opinion as to their schedule. Evidence of their wishes came out through the guardian ad litem. [L.F.] seems to be doing well emotionally. [K.F.] has been struggling with cutting herself and an attempt at suicide. Children should not use threats as a means of having their voices heard, but that does not appear to be the case here. [K.F.] has been in counseling for quite some time. With a potential for a change in her primary residence, her emotional well-being seems in jeopardy. [L.F.] made it clear to the guardian ad litem he would like to spend time with Mr. Finley, just not overnights. He claimed that bad things happen—bad things will happen again if he were to stay the night. [K.F.] would also like to see Mr. Finley but in a supervised setting, only two to three times per month. She is afraid Mr. Finley will ask her about this process and be upset with her for things she might have done, as such as contacting his family.

1 RP at 452-60 (alterations added).

On December 17, 2021, the trial court entered a final order and findings for a

parenting plan and child support, final parenting plan, final child support order, and final

11

restraining order. The final parenting plan placed limits on Kevin Finley stemming from the court's finding under RCW 26.09.191(3). The plan granted Dawn Chesser primary custody and sole decision-making authority. The plan established for Finley a 4-phase therapeutic and supervised visitation schedule eventually ending up with visitation with no overnights.

## LAW AND ANALYSIS

### Parenting Plan

On appeal, Kevin Finley challenges many findings of fact in the family court's December 3, 2021 oral ruling, which findings the court incorporated into the written parenting plan entered on December 17, 2021. Rather than listing or quoting each challenged finding, we extract from Finley's appeal brief those attacks he levies on the family court's findings of fact and conclusions of law:

1. The evidence did not support a finding by the family court that Dawn Chesser did not engage in domestic violence.

2. The evidence only supported a finding that Dawn Chesser engaged in domestic violence.

3. The family court's other findings conflicted with the court's finding that Dawn Chesser did not engage in domestic violence.

4. Substantial evidence did not support the court's negative findings that Dawn Chesser did not neglect her parental duties towards the children, does not have a substance abuse problem that interferes with her ability to parent, has not withheld the children from Finley without good cause, has not engaged in acts of domestic violence, has allowed someone to engage

in acts of assault while residing in her home, and has not engaged in abusive conflict.

5.  The family court's negative findings listed in paragraph 4 above conflicted with the court's findings that Dawn Chesser neglected her parental duties, engaged in acts of domestic violence, allowed someone to engage in acts of assault while residing in her home, engaged in the abusive use of conflict in a way that endangers or damages the psychological development of the children, and suffers from long-term emotional problems that interfere with her ability to parent.

6.  Substantial evidence did not support the family court's finding that Kevin Finley lacks insight or the concerns of the court about Finley providing parenting functions in the future.

7.  The family court's finding that Kevin Finley lacked insight into K.F.'s needs as a young girl and that his behavior raised concern about his assuming parental functions in the future conflicted with the finding that Finley did not abuse or threaten the children and had not sexually assaulted anyone.

8.  Little evidence was admitted about the children's relationship with one another despite the family court's reliance on this factor when entering the parenting plan.

9.  The family court erred when finding the probability of Dawn Chesser's harmful or abusive conduct reoccurring was so remote it would not be in the children's best interest to apply the limitations.

10.  The court made no express finding that the probability of Dawn Chesser's conduct reoccurring was so remote that it would not be in the children's best interest to apply the limitations.

11.  The family court should not have imposed RCW 26.09.191 limitations only on Kevin Finley.

12.  The court erroneously failed to impose RCW 26.09.191 limitations on Dawn Chesser.

13

13. The family court erroneously granted Dawn Chesser sole decision-making authority.

14. The family court did not correctly weigh the factors under RCW 26.09.187 when entering the parenting plan.

15. The trial court erred in its award of child support because of the erroneous parenting plan.

Kevin Finley's challenges to the family court's ruling in essence attack the court's ruling that any untoward behavior of Dawn Chesser lies in the past. Therefore, according to Finley, the court erred when declining to place any RCW 26.09.191 limitations on Chesser. Finley does not dispute that the court correctly imposed .191 limitations on him, only that the court declined to impose reciprocal limitations on Chesser. In turn, Finley contends the family court erred when granting Chesser sole decision-making authority and favoring her with principal residential placement.

Kevin Finley's appeal requires this court's review of statutory law governing parenting plans. A key statute, RCW 26.09.187, not only outlines the criteria for sharing residential placement of the children between the two parents but also allocates authority to render important decisions impacting the children. The family court must weigh a number of factors when assigning times of residential placement between the parents: (1) the relative strength, nature, and stability of the children's relationship with each parent, (2) the agreements of the parties, (3) each parent's past and potential for future

performance of parenting functions, (4) the emotional needs and developmental level of the children, (5) the children's relationship with siblings, other significant adults, school, and significant activities, (6) the wishes of the parents and the wishes of children who are sufficiently mature to express reasoned and independent preferences, and (7) each parent's employment schedule. RCW 26.09.187(3)(a). Nevertheless, if the family court enters a finding of misbehavior against a parent under RCW 26.09.191, these seven factors do not control residential placement. RCW 26.09.187(3) begins:

> (a) . . . Where the limitations of RCW 26.09.191 are not dispositive of the child's residential schedule, the court shall consider the following factors.

RCW 26.09.187 also directs the court to assign sole decision-making power to one parent if: (1) both parents oppose mutual decision making, (2) one parent reasonably opposes mutual decision making, or (3) important to this appeal, one parent has engaged in behavior listed in another statute, RCW 26.09.191. Otherwise, when allocating decision-making authority the court must consider: (1) the history of participation of each parent in decision making, (2) a parent's demonstrated ability and desire to cooperate with the other parent in decision making, and (3) each parent's geographic proximity to one another, to the extent that it affects their ability to make timely mutual decisions.

RCW 26.09.191 requires the family court to determine whether the behavior of one party should restrict that party's decision-making authority and limit the parent's residential schedule with the children. The lengthy statute declares:

> (1) The permanent parenting plan shall not require mutual decision-making . . . if it is found that a parent has engaged in any of the following conduct: (a) Willful abandonment that continues for an extended period of time or substantial refusal to perform parenting functions; (b) physical, sexual, or a pattern of emotional abuse of a child; or (c) a history of acts of domestic violence as defined in RCW 7.105.010. . . .
>
> . . . .
>
> (2)(a) The parent's residential time with the child shall be limited if it is found that the parent has engaged in any of the following conduct: (i) Willful abandonment that continues for an extended period of time or substantial refusal to perform parenting functions; (ii) physical, sexual, or a pattern of emotional abuse of a child; (iii) a history of acts of domestic violence as defined in RCW 7.105.010 [former RCW 26.50.010] . . .; or (iv) the parent has been convicted as an adult of a sex offense under [(A) through (J)].
>
> . . . .
>
> (n) If the court expressly finds based on the evidence that contact between the parent and the child will not cause physical, sexual, or emotional abuse or harm to the child and that the probability that the parent's or other person's harmful or abusive conduct will recur is so remote that it would not be in the child's best interests to apply the limitations of (a), (b), and (m)(i) and (iv) of this subsection, or if the court expressly finds that the parent's conduct did not have an impact on the child, then the court need not apply the limitations of (a), (b), and (m)(i) and (iv) of this subsection. . . .
>
> . . . .
>
> (3) A parent's involvement or conduct may have an adverse effect on the child's best interests, and the court may preclude or limit any provisions of the parenting plan, if any of the following factors exist:

16

(a) A parent's neglect or substantial nonperformance of parenting functions;

(b) A long-term emotional or physical impairment which interferes with the parent's performance of parenting functions as defined in RCW 26.09.004;

(c) A long-term impairment resulting from drug, alcohol, or other substance abuse that interferes with the performance of parenting functions;

(d) The absence or substantial impairment of emotional ties between the parent and the child;

(e) The abusive use of conflict by the parent which creates the danger of serious damage to the child's psychological development. Abusive use of conflict includes, but is not limited to, abusive litigation as defined in RCW 26.51.020. . . ;

(f) A parent has withheld from the other parent access to the child for a protracted period without good cause; or

(g) Such other factors or conduct as the court expressly finds adverse to the best interests of the child.

RCW 26.09.191 (alterations added).

According to Kevin Finley and to employ two negatives, substantial evidence does not support the family court's finding that Dawn Chesser did not commit domestic violence because, when delivering its oral ruling, the court found that: "The record supports a finding that Ms. Chesser has engaged in acts of domestic violence against Mr. Finley." 1 RP at 445. Finley maintains that, because the court found Chesser committed domestic violence and did not make the express mandatory finding under RCW 26.09.191(2)(n) that the probability of her harmful or abusive conduct reoccurring was so remote it would not be in the best interests of the children to apply the limitations of .191(2)(a), it was required to place those limitations on her and erred in failing to do so.

17

We disagree with Kevin Finley's analysis of the facts and the law for many reasons. First, Finley's principal contention on appeal arises from an ostensible conflict in the family court's findings during its oral ruling. In his brief, Finley correctly observed and quoted that the court commented: "the record supports a finding that Ms. Chesser has engaged in acts of domestic violence against Mr. Finley." 1 RP at 445. Finley then wrote that the family court inconsistently declined to enter a finding that Chesser "engaged in domestic violence." Br. of Appellant at 8-9. We question whether the trial court found that Chesser engaged in domestic violence, and we also wonder whether the trial court refused to find that Chesser engaged in domestic violence.

A court commenting that the record supports a finding of a particular fact does not necessarily equate to the court finding that fact. The court could simply mean that some evidence in the record supports such a finding. But the court might be contemplating, at the same time, that other evidence contravenes such a finding, and, in the end, the court deems the countervailing evidence stronger.

During its oral ruling, when discussing a potential finding of domestic violence by Dawn Chesser, the family court also commented:

> She was arrested for second-degree assault, family violence, on October 25, 2011, with Mr. Finley as the listed victim. The charge was dismissed, as the prosecutor was unable to locate Mr. Finley.

18

1 RP at 445. These remarks may imply that the court concluded that the domestic violence did not occur because the prosecution dismissed criminal charges. The family court immediately thereafter intoned:

> Even though a finding of family violence may be warranted, under RCW 26.09.191(2)(n) the Court may decide not to impose mandatory limitations provided the Court expressly finds that the probability of Ms. Chesser's harmful or abusive conduct reoccurring is so remote that it would not be in the children's best interest to apply the limitations.

1 RP at 445. This passage suggests that the court declined to conclude either way as to whether Chesser behaved violently against Kevin Finley, because such a finding bears little, to no, relevance in the court's ruling. The violence occurred a decade earlier, and Chesser had not repeated the assaultive behavior.

Kevin Finley also argues that substantial evidence fails to support a negative finding that Dawn Chesser assaulted him. In turn, Finley faults the family court for its failure to impose RCW 26.09.191 limitations on Chesser. Regardless of whether the family court declined to find domestic violence against Chesser and whether evidence supported this negative finding, Finley fails to recognize the family court's application of RCW 26.09.191(2)(n). Finley writes that the court omitted any finding, under RCW 26.09.191(2)(n) "that the probability of Ms. Chesser's harmful or abusive conduct reoccurring is so remote that it would not be in the children's best interest to apply the limitations." Br. of Appellant at 10. To the contrary, the court entered such a finding.

19

Finley even cites page 445 of the report of proceedings at which place the court entered such a finding. *See* Br. of Appellant 10. Thus, the family court did not err when declining to impose .191 limitations on Chesser.

Similarly, Kevin Finley asserts that the family court found that Dawn Chesser neglected her parental duties towards the children, abused controlled substances, withheld the children from Finley without good cause, and allowed a third person to assault her. Finley then faults the court for purportedly later declaring that it made no such findings when it refused to impose RCW 26.09.191 limitations on Chesser. Our same reasoning from before extends to these additional contentions of Finley. The family court ruled that, regardless of whether Chesser neglected her parental duties towards the children in the past, previously abused controlled substances, earlier withheld the children from Finley without good cause, and allowed a third person to assault her in the past, the conduct occurred long enough ago that the court could find that Chesser will likely not repeat the behavior.

We recognize that the trial court made findings against Dawn Chesser under RCW 26.09.191(3)(b) and (e). The court found that Chesser suffered from long-term emotional or physical problems that interfered in her ability to parent. The court also found that Chesser used conflict in a way that may cause serious damage to the psychological

development of her children. Nevertheless, those findings permit but do not require that restrictions be placed on her residential time with the children.

We review findings of fact for substantial evidence. *In re Marriage of Fahey*, 164 Wn. App. 42, 55, 262 P.3d 128 (2011). Substantial evidence exists if the record contains evidence of a sufficient quantity to persuade a fair-minded, rational person of the truth of the declared premise. *In re Marriage of Fahey*, 164 Wn. App. 42, 55 (2011). We review a trial court's conclusions of law to determine whether the findings of fact that are supported by substantial evidence in turn support the court's legal conclusions. *In re Marriage of Fahey*, 164 Wn. App. 42, 55–56 (2011).

This court reviews a trial court's parenting plan for an abuse of discretion. *Underwood v. Underwood*, 181 Wn. App. 608, 610, 326 P.3d 793 (2014). A trial court abuses its discretion when it makes a manifestly unreasonable decision or bases its decision on untenable grounds or untenable reasons. *In re Marriage of McNaught*, 189 Wn. App. 545, 552, 359 P.3d 811 (2015). A court's decision is manifestly unreasonable if it is outside the range of acceptable choices, given the facts and the applicable legal standard. *In re Marriage of Horner*, 151 Wn.2d 884, 894, 93 P.3d 124 (2004). A decision lies on untenable grounds if the factual findings are unsupported by the record. *In re Marriage of Littlefield*, 133 Wn.2d 39, 47, 940 P.2d 1362 (1997).

We conclude the family court did not abuse its discretion. We uphold the family court's finding that Kevin Finley engaged in behavior justifying RCW 26.09.191 limitations. We further sustain the court's finding that the possibility of Dawn Chesser's harmful or abusive conduct reoccurring is so remote that it would not be in the children's best interest to apply the limitations. These two rulings suffice to uphold the court's residential placement plan because the factors found in RCW 26.09.187(3)(a) do not apply when the court enters .191 limitations against one party. We note, however, that the family court thoroughly considered and weighed the factors found in RCW 26.09.187(3)(a).

Kevin Finley's challenge to the family court's imposition of child support assumes that this court reverses the parenting plan. Since we do not reverse the parenting plan, we sustain the order of child support.

### Attorney Fees

Kevin Finley requests an award of attorney fees under RCW 26.09.140. According to Finley, he has the need for payment of fees and Dawn Chesser has the ability to pay those fees. We deny the request because of the failure of Finley to file a declaration of financial need and the failure to analyze the parties' respective needs and abilities.

RCW 26.09.140 provides that "[u]pon any appeal, the appellate court may, in its discretion, order a party to pay for the cost to the other party of maintaining the appeal and attorneys' fees in addition to statutory costs." RAP 18.1(c) declares:

> Affidavit of Financial Need. In any action where applicable law mandates consideration of the financial resources of one or more parties regarding an award of attorney fees and expenses, each party must serve upon the other and file a financial affidavit no later than 10 days prior to the date the case is set for oral argument or consideration on the merits.

Kevin Finley filed no affidavit. He provided the court no analysis in his brief as to the respective finances of the parties.

## CONCLUSION

We affirm the family court's parenting plan and order of child support. We deny Kevin Finley an award of attorney fees and costs on appeal.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Fearing, J.

WE CONCUR:

Lawrence-Berrey, C.J.

Staab, J.

23